When the case is called, when the case is called, I ask that each of you speak up because as both of you know, this is not a microphone, and each side will have 15 minutes each, and the appellant will have 5 minutes to respond. If you would call the case, please. Good morning. Case number 14-06-4L, Prince v. Sheridan. Good morning, Your Honor. My name is Paul Festenstein. I represent... Counsel, we usually stand up for public argument. I'm supposed to stand up, Your Honor. Oh, okay. I was just introducing myself. Oh. May I proceed? Yes, you may proceed. I apologize. My name is Paul Festenstein. I represent the appellant, Alan Prince. May it please the Court. Thank you for taking the petition for leave to appeal. In this case, I believe that the issue before the Court is an important one. Otherwise, the Court would not have considered granting oral argument. And I think the issue is important because of the interplay between the standard of review, the abuse of discretion standard, and the factors that are outlined by the Supreme Court in Snover v. McGraw. There really are five factors that are outlined in Snover v. McGraw. I have a question about your brief. You seem to indicate that in granting the new trial on damages, that the trial judge was required to insert in the order one of the grounds statement of Snover? Yes, I believe so. Well, I have a copy of Snover here. Snover doesn't say that. Snover doesn't say that explicitly. However, two cases since Snover require the trial court to provide the basis for its ruling. I mean, the trial court has to rule based on that, but Snover doesn't say that you have to do it. I got it here. And in your brief, you suggest that it does. I believe that in order for – in order to implement what the Supreme Court says, Your Honor, that the determination is best made by the trial court in post-trial motions, that it's incumbent upon the trial court to give some insight in writing as to the basis of its ruling. Snover says so. I believe that it's evident from not only Snover, but it's also evident from Dixon. It's also evident – Counsel, if there was a case you'd be requiring a trial judge to give a written reason for everything he does. Your Honor, the post-trial motion for a new trial is a significant motion. I believe that you – It's done every day, Counsel. And they're granted and they're denied every day. So every time the judge gets one, he's got to put it in writing. It wouldn't be – it wouldn't require him to write, you know, a lengthy opinion. It would just require him to state the basis for his opinion. I'm in for your brief. The trial court failed to make one of the three findings required under Snover. It is not required under Snover, period. Unless you'd like to read Snover, I have it here. I read it again yesterday. That's not fair. That's not fair to write a brief like that. When you start seeing cases say things when they don't say it. It's not fair to us and it's not fair to your opponent. Waste paper and waste time. Well – Go ahead. I respectfully disagree with your Honor. I think that there's enough in – the Supreme Court was specific enough in its mandate in order to – Counsel, you're not going to win the point, so move on to the next point. Okay, thank you. Okay. So the first of the five factors that I believe Snover requires is a substantial deference to the jury verdict. And I believe that substantial deference to the jury verdict was not done in this case. The jury did not ignore – the next factor is whether or not the jury ignored a proven element of damages. And the jury did not ignore a proven element of damages. The jury awarded money damages for every one of the plaintiff's claims of injury. And we have a – the jury verdict is attached to our province brief. The third factor is that – continue to add the second factor. I'm sorry. Dr. Lins, the plaintiff's own treating orthopedist who was one of the first ones that treated the plaintiff after the accident, found that two and a half months after the accident that she was symptom-free except for her subjective complaint of pain. He did a complete workup of her in May of 2010, two and a half months after the accident. He found a normal neurologic exam. He found a normal exam of the left shoulder. He found a normal exam of the cervical spine. She had full range of motion in her left shoulder. She had full range of motion in her cervical spine. She had no deficits in her reflexes. So he concluded that she had an aggravation of a pre-existing degenerative condition in her neck and she was asymptomatic after two and a half months. He also concluded that her radicular complaints were consistent with a C5-6 herniation. Specifically – He said – which begs the question, Your Honor. It begs the question that the evidence in the case was conflicting even from some of the same witnesses. The evidence – The jury awarded the plaintiff in excess, actually, of 100 percent of her medical bills. So they obviously rejected Dr. Brackett's theories. They had to have rejected it implicitly in awarding her her full medical bills. But I'm only commenting that Len specifically said that her radicular complaints were consistent with C5-6 herniation. I don't think anyone suggests that she didn't have degenerative disc disease to start with. But the question, I suppose, becomes – and what it really boils down to – is the award of $1,500 for pain and suffering and $1,500 for deprivation of useful life consistent with award of full medical expenses and testimony as to the permanency of her injuries. That's what it boils down to. Okay. I would be glad to address that. But Dr. Linz also states in the record at page 164 that, in my best professional opinion, the C5-C6 herniation did not occur on the day of the accident. Well, we understand that. But her radicular complaints were consistent. But she does have testimony from her own operating doctor that the C5-C6 herniation did come from the events of the accident. Right. I agree. His testimony is based strictly on her subjective testimony and subjective history. He did operate on her, didn't he? His conclusion that the disc was herniated. When he was cross-examined by Mr. Shea, he stated under oath that the disc did not extrude past the posterior ligament. That's the definition of a posteriorly herniated disc. So he testified and he said that his own operative report said that the disc did not meet the definition of a herniation. Dr. Brackett based his opinion – Where do we get the definition of the herniation from? From Dr. Brackett. Well, I don't think the jury believed Dr. Brackett. Because Dr. Brackett said that she had nothing but, you know, minor aggravation, didn't even believe that – said that he only thought that it was indicative of a C6 nerve lesion. And if she'd suffered a disc herniation as a result of the collision, she wouldn't have been able to drive 300 miles the following day. Dr. Brackett concluded that – he agreed with Dr. Lins that there was an aggravation of a pre-existing degenerative condition in her neck. That degenerative condition lasted two and a half months. It didn't require surgery. However, she recovered after the surgery in one month. So there is a way for the jury to have said, okay, fine, we'll compensate her for her surgery because her pain and suffering after that surgery only lasted one month. That was the testimony of Dr. Boland when he was cross-examined as to what the patient's pain complaints were post-surgery. So there is a way to adopt – to construe what the jury found as consistent with Dr. Brackett's opinions that the herniated disc – that there was no herniated disc, number one, that there was an aggravation of a pre-existing condition, and that there was no C5 radiculopathy. If you look at an objective test, which Snover requires you to do, Snover requires you to compare objective symptoms with subjective complaints. The EMG was the only positive objective test. The EMG noted that the pain was consistent with an elbow nerve injury. Everybody agrees that the elbow – the entrapped nerve in the elbow has nothing to do with this case. I understand. Your experts and their experts. Right. And I think that's an important agreement because the symptoms in the hand aren't related to the accident. They're related to something else. They're related to – But it's the neck and shoulder that is really the crucial area that the pain and suffering came from. And Dr. Boland did say it was permanent. Dr. Boland indicated that based on her subjective complaints, it was a permanent injury. He said that. But he could only link up the two based on her subjective complaints. He could not link it up based on anything else. So if we're supposed to compare subjective complaints to objective signs and symptoms, and if we do that, and if the jury decided, well, we got to watch her testify, we got to watch her method and manner of testifying, we know she did not shriek for two full days after the accident, instead she got in a car and drove 700 miles, the jury is allowed to rely on its common sense and the affairs of life and say, you know what, she wasn't injured as badly as she complains that she was injured, therefore we're going to award her $3,500 for her non-economic damages. And I don't believe that $3,500 under this evidence is de minimis, given the fact that she had three weeks of physical therapy ordered by Dr. Lenz, and then she came back after the physical therapy to see Dr. Lenz, and he found her to be symptom-free. She has the surgery, and a month later she's telling Dr. Boland, this is a year after the accident, I'm pain-free. In my arm and in my neck, I'm pain-free. So there's a way to reconcile what the jury verdict with the evidence in this case, but instead of doing that, the judge substituted his own ruling for the jury's, took it away from the jury without any explanation. But the case law also indicates that, and maybe you can tell me how these two principles play out here, that it is for the jury to decide the award of damages, and we give them great discretion to do so. But we also realize that a trial judge is the person who saw all the witnesses as well and has the front seat on assessing the credibility and looking at the evidence as to granting or denying a new trial. I agree with both of those principles of law 100%. To reconcile them, maybe, and I just realized this when I again looked at the judge's order of July 30th, the judge's order of July 30th does not award a new trial just on damages. The judge awards a new trial on causation. And so that's an inference, a reasonable inference, that he knew that the testimony on causation was highly disputed. Wouldn't causation always be an element of a retrial on damages? You have to prove that the damages that you're requesting are causally related to the breach of duty. Correct. Under the first lower factor, you're right. So it's every case. So him putting in there causation, too, there's nothing wrong with that. There's nothing wrong. It's surplus verbiage. Absolutely. There's nothing wrong with it. But it does provide some insight as to the basis of his ruling. It's the only word that he uses in his entire order, his half-page order, that tells us what he was thinking when he vacated his own order. Counsel, we can't figure out what he's thinking. I mean, that's not possible. We don't have crystal balls up here. Okay. So whatever he was thinking, he was thinking. The question is, did he abuse his discretion in granting the new trial on damages? Are the damages inadequate under a manifest weight standard? On a manifest weight standard, the damages aren't inadequate because all of the witnesses in the case had conflicting testimony except for Dr. Brackett. Dr. Brackett, in fact, was the only one who consistently held to his opinions, and he was the only one who was not cross-examined in a way that impeached his opinions. Dr. Boland was impeached. Dr. Lenz was inconsistent with his opinions. The plaintiff's symptoms, what she testified to and what the appellee relies upon in their brief, is that she wasn't able to play with her grandchildren. She wasn't able to do those things that were the things that she did before the accident. Those aren't objective signs. Those are subjective complaints. She claims she did not have full range of motion. We know that range of motion is controlled by the patient. It's not completely an objective sign. It's a sign that can be controlled by the patient. The evidence here is contradicted. Under the Winkler case, Polizek v. Winkler, where the award is merely based on the subjective testimony of the plaintiff, the jury is free to disregard it. So if the jury believed that Ms. Sheridan did not have a herniated disc in her neck, then the jury was free to disregard that injury. If the jury didn't believe that she had a herniated disc in her neck, why did they award damages for the surgery? What would have been the basis for the awarded damages? The basis would have been they couldn't decide whether or not she had a herniated disc or not. Counsel, they answered a special interrogatory, too. What did it say? That an injury was proximately caused. Yeah, and they awarded damages for surgery. They could not have awarded damages for surgery if they didn't find causation. They would have had a rewarder. If they thought she had nothing but a sprained neck, they would have awarded damages probably up to the point in time when she went to see Boland. And after that, nothing. I mean, is there evidence in this record that she's guilty of symptom magnification? There certainly is. There isn't any question about that. Sits in front of a jury for three days and then says on a scale of 1 to 10, her pain is constantly number 10. And probably another reason why the jury went after her. But the point that I'm trying to make to you is there is no conceivable way they could have awarded the medical expenses for that surgery if they didn't find that this woman had a herniation that was causally related to this accident. But let's assume all that's true. Let's assume all that's true. Does it mean that the $3,500 in non-economic damages is inconsistent? I don't understand why you've wasted two-thirds of your time talking about it. It's not inconsistent. I mean, the whole issue is, assuming as the jury awarded damages for all of her medical expenses that her entire injuries as testified to by Boland and not Brackett were causally related to her injury, is the $1,500 for pain and suffering and the $1,500 for loss of useful life inadequate on a manifest weight stand? And what is the reason why the jury could have discounted her claims of pain and her claims of interruption of a useful life? What's in this record that allows them to do that? Okay. What's in the record is her testimony that her injury manifested itself by her own subjective complaints and nothing else. And that's what's in the record. And therefore, the jury was free to decide that the testimony of the plaintiff could be rejected and they could decide in their own discretion, which they have, to award damages based on their perception of the credibility of the plaintiff. So that's one basis. And the other basis is Dr. Boland's own testimony that he can't relate the two things unless the plaintiff says they're related, unless the plaintiff gives them a history. The plaintiff's been impeached. Therefore, her history is subject to impeachment and the jury could disregard it. Was the fact that she had permanent screws in her neck based on her subjective testimony? No. Okay. It was not. Was the fact that she had permanent restrictions on her neck movement based on her subjective testimony? Yes. No, it wasn't. Boland said it and so did Brackett. Brackett said it was de minimis. Boland said it could have been between 5 and 10 degrees, but they both said it was permanent. So then is your position that the surgery was unnecessary, counsel? No. What I'm saying is that the surgery, that the recovery from the surgery was such that she admitted that within a month after the surgery she was better. So therefore, the jury could have decided that in that month she should be compensated for her loss of a normal life and her pain and suffering for 1,500 hours and 500 hours for her disfigurement. Why just that month when she testified to pain from the moment the collision took place? Right. And three weeks later she was fine after three weeks of physical therapy according to Dr. West. Well, the three weeks of physical therapy was already, what, four months out? No. The three weeks of physical therapy happened in the first two and a half months. So she saw Dr. Lenz in May. That's almost two and a half months or so. And he found nothing wrong with her. But he sent her to the physical therapy, right? It's unclear from the record whether he sent her or whether she was already there because Dr. Smith sent her. But she's still in pain through all the time before she goes to Dr. Bowen. So why would we only look at the period after the surgery to determine whether the $1,500 was adequate? Her testimony was inconsistent on her subjective complaints of pain. Not according to her medical records. Every time she saw a doctor she said she had pain in her neck, she had pain in her shoulder. Now, it's true that Lenz said he even attempted to provoke the symptoms and he couldn't do it. But she complained at every doctor. She complained at Mohart. She complained at Smith. She complained at Lenz. And she certainly complained at Bowen. So, I mean, she was complaining during this entire time. But is that enough under Snover to reverse the jury verdict? That's the issue. It's within the confines of the evidence. I agree, Your Honor, completely. But I think that Snover provides three specific factors to examine the evidence. And I think that's why I spent so much time in my brief examining those three factors. Passion and prejudice, there's no evidence of that. There's no evidence that a proven element of damages was ignored. The evidence in this case was controverted. There was specific controversy on every piece of evidence that the plaintiff presented. The defense presented rebuttal testimony to every point raised by the plaintiff. So, therefore, the jury could have decided that the defense evidence was more persuasive and entered the verdict accordingly. There's some. We have run over your time. Does anyone? Thank you. Can you please report, counsel? My name is Joanna Fryer. I am the attorney for the appellee, Julie Sheridan. It appears we've put to rest the issue of whether Snover requires the court to make a specific finding. I wouldn't even waste any time on this. Okay. The bottom line, then, Your Honors, is that under Snover, we have to decide whether the plaintiff suffered a serious injury. And that question is answered in the jury's returning a verdict for all of her medical bills as well as answering the special interrogatory and the affirmative. The jury obviously believed that all of her medical treatment was causally related to the accident. And so the next question becomes whether the awards for pain and suffering and loss of normal life were not reasonably related to the loss sustained when you take the evidence as a whole. And defense counsel is arguing for a piecemeal analysis of the evidence that was presented at trial, looking at direct examination and cross-examination of various witnesses in a vacuum. Snover and subsequent cases, including Torres, require the court to view the evidence as a whole. And when you do that, you see that consistently there was both subjective and objective evidence of pain and suffering. Well, let me ask you a question. Sure. You have in your brief here that the jury ignored proven elements of damage. What elements did they ignore? That would be the alternative to the argument of no relation, and that would be the pain and suffering and the loss of normal life. They ignored the pain and suffering. They did make an argument. So they didn't ignore anything. Correct. The question is, is it adequate? Now, the question I have for you is, as I follow down this factual scenario, we've got her going into Lenz in May complaining of shoulder pain, pain radiating down her left arm. He examines her and finds a full range of motion in her neck and left shoulder, no tenderness in the AC joint at the top of her left shoulder, normal grip strength and intact sensation on all four surfaces of her left hand, normal reflexes in her left arm. He attempts to provoke symptoms in her. Can't do it. So he testifies that her radicular complaints, her subjective complaints, certainly were consistent with a C5-6 herniation, and she continues to complain of the same pain when she sees him in June, and he orders an EMG. The EMG turns up suggesting that she's got nerve conduction velocity problems in her left elbow. Everybody agrees it has nothing to do with the accident. We then have X-rays that demonstrate degenerative disc disease at C5-6. He orders an MRI. The MRI is taken, and it demonstrates a large disc spur at C5-6, mainly to the left side. And his testimony is that the degenerative disc disease was not caused by the accident, and I don't think there's anyone who suggests it was. She reports no improvement. He gives her steroid injections. Now, she can't say that the steroid injections hurt, because she testified she was sedated when they gave them to her. So I suppose my question is, in her testimony at trial, that she had number 10 pain while she was sitting in front of the jury, I think could have suggested to the jury this lady is guilty of symptom magnification, and they took it out on her. Do they have a right to do that? I'll start with the prior questions first. I do believe that, first of all, I would note that the degenerative disc disease, to the extent that it exists, it was asymptomatic. Asymptomatic, no question. And so, you know, that really is a non-issue as far as that's concerned. And none of these conservative treatment efforts alleviated any of her pain. I think the testimony was clear from all the treaters as well as the plaintiff herself that that's why she ended up getting a referral to Dr. Boland and eventually surgery, is because all of these treatments failed and her pain continued. So while she might have been sedated during some of the procedures, she was continuing to experience pain throughout the whole course of this period of time. With respect to your last question, Judge Hoffman, concerning whether the jury has a right to punish her for what they believe to be symptom magnification, I would submit that under these circumstances, under all of the evidence, including the objective findings of the treaters, particularly Dr. Boland himself, I would submit that they do not get to punish her to this degree and that a punishment to this degree amounts to an award not reasonably related to the loss sustained. I mean, there are a series of cases that indicate that when you're giving damage awards for pain and suffering and loss in human life that are less than generous doesn't mean that those awards are inadequate. I do not disagree with that line of cases, Your Honor. So let me ask. I suppose my difficulty with the case is if they think she's guilty of symptom magnification, can they also disbelieve her subjective complaints of pain throughout the entire? I would submit no, not with the combination of the subjective and objective symptoms. The Murray case that I cited, that was a soft tissue case, and the extent of injury only was disputed. And the jury in that case was not free to award nothing at all for pain and suffering. Nothing in all cases are different than less than generous cases. Understood, but I guess I would say that if you're analogizing the two cases, in Murray we've got soft tissue, so there's a zero award. Here we've got a rather large amount that should be there for pain and suffering. It's something in excess of $1,500. In the grand scheme of things here, with the constant pain over this long period of time leading up to surgery and the permanency that Dr. Bowen actually assured the jury would occur, both with respect to loss of range of motion and loss of normal life as well as pain and suffering, that the $1,500 awards do really essentially amount to zero awards. And I don't think any of the case law stands for the proposition that it must be zero in order to be found not reasonably related to the loss sustained. I don't think the case law says that.  Those are the cases that are analyzed based on I forgot the other. Less than generous cases are not analyzed in that fashion. And I've searched high and low to find a less than generous case where it was compared to the medical expenses and I seem to have difficulty finding them. You seem to be able to find no awards, and I found those too. But I don't find the less than generous cases. And had I found one myself, I would have included it in the brief. But that being said, I think if the third Stouffer element is to have any meaning whatsoever, an award not reasonably related, then there has to be a contemplation of this particular type of circumstance where it's not a zero award. And Snover also instructs that consideration should be given to objective and subjective complaints. And Snover doesn't seem to be too enamored when the basis for the award is subjective testimony. Now, when we talk about pain, even Brackett admits that a herniated disc is painful. There's a question about that. But I wonder how we draw the line and who gets to draw the line. Well, again, we're here under an abuse of discretion standard, and the case law certainly states that the trial court's in the best position to evaluate the testimony of the witnesses and the credibility. And so under that standard, I would certainly say that deference should be given to the trial court's opinion in that regard. But also, Snover speaks of corresponding awards for pain and suffering. And as far as the subjective versus subjective-objective interaction, what the case law says we're looking for is a consistency between the subjective complaints and the objective factors. And particularly with the surgery involved of this nature here and the conservative treatments that were given and failed, I do think that the subjective complaints are indeed consistent with the objective factors, at least to an extent greater than a $1,500 award for both of the elements of damages. So I would suggest that there is no reason to believe that the trial court abused its discretion in granting the new trial motion. There's no reason to find it was arbitrary, unreasonable, fanciful, or that no court could agree with the trial court's opinion in that regard.  You affirm the July 30, 2014 order granting the new trial because the court's implicit conclusion that the jury award bore no reasonable relationship to the law sustained was, in fact, not arbitrary, fanciful, or unreasonable. Thank you. I only have a few comments. I believe that there's one fact in evidence that we are overlooking here in weighing whether or not the jury award has a reasonable relationship to the injury sustained, and that is that two doctors testified, one Dr. Lenz and one Dr. Brackett, that if she truly had herniated disc, she would have been in excruciating pain on the day of the accident. The evidence in the case was completely to the contrary. Evidence in the case was... Lenz testified that the results of the MRI were consistent with the disc herniation at C5-6. Well, I'm focusing on a different part of Dr. Lenz's testimony. I'm focusing on the cross-examination of Dr. Brackett. He conceded, it was noted in the report, that the herniation was effacing, certain meaning that there was something pressing against her spinal cord. He admitted that the hole in the posterior annulus is consistent with the disc herniation, as are the disc fragments, which he noted were removed in his report. All of these things are consistent with the herniation. Although he didn't think there was herniation, he believed there was nothing more than a C6 nerve lesion. Right, so if there's a C6 nerve lesion, and if the symptoms of that nerve lesion were corrected within a month to six weeks after her surgery, when you combine that with the two-and-a-half months, the jury was within its discretion for four-and-a-half months of pain and suffering to award $1,500 for pain and suffering and loss of a normal life of an additional $1,500. I don't believe that the jury punished Ms. Sheridan. The jury under Snover has the discretion to disregard her subjective complaints. And the jury also has the discretion to focus on the fact that she drove 700 miles after this accident. What's 300? Seven hours, I apologize, seven hours she drove. I apologize, I misspoke. So she drove for seven hours, and she also saw her client that she was supposed to see on the day of the accident and didn't seek medical treatment, didn't turn down emergency medical treatment at the scene, did not go to a hospital, did not see a doctor that day. And then 48 hours later when she's back in her hometown, she sees her internist, Dr. Mohart, I believe. We haven't discussed this issue of what the effect of what the June 30th order was on the court's review of. June 30th order has nothing to do with it. The appeal was taken from the July 30th order. That's the order that you appealed from. That is the order that I appealed from. However, the reasoning of the June 30th order is relevant to what the court did in this case. The court decided, the court almost applied a Hinnon standard. The Hinnon standard was the prior standard before Snover. And the court said, well, the special interrogatory is inconsistent with the verdict, therefore we're throwing out the verdict. And that was the June 30th order. And the court realized that he couldn't do that, so he vacated that order. The order, the special interrogatory was that negligence was a proximate cause of any injury suffered. Was that the wording, any injury suffered? It was either any or an injury. I think it's the words any. Any. Okay. So A, does that just limit it to the herniated disc? No, it's all of her injuries. It's everything, including the herniated disc. Okay. It's any injury suffered. And if they awarded damages for the Bullen operation, then they must have come to the conclusion that the condition for which he operated on her was causally related to the motor vehicle accident. And if that's the case, is the award of $1,500 for pain and suffering and $1,500 for loss of useful life within the realm of reasonable compensation? Or is it totally outside the realm? Well, that's 10% of the fixed damages. So the jury has the discretion to disbelieve the plaintiff's testimony as to pain, and the jury could have decided that that award of over 10%, if you include the disfigurement, was sufficient to compensate her for what she went through as a result of that surgery. Would $1,500 seem reasonable just for the fusion surgery itself? The fusion surgery itself didn't cause pain. You don't think there was any post-surgical pain? There was post-surgical pain. I agree. There was post-surgical pain. I completely agree. It lasted about a month. According to Dr. Bowman's history taken from the patient. So the patient can't have it both ways. She can't admit that she didn't have pain and suffering for more than a month after her surgery and then come into court later on in front of the jury and say, my pain's a 10. The jury could have just decided, you know what, this is not acceptable and we're going to award what we think is the appropriate amount of money for her pain and suffering. It's not a case where the plaintiff got zero. It's not exactly Stover. And there are very few cases, I couldn't find any, where the jury gave less than what somebody claims is less than adequate damages instead of a zero and the court upheld it. The dearth of the case law, there isn't much out there. Thank you. Thank you, counsel. The matter will be taken under advisement.